Joe B. OWEN et al., Petitioners,

v.

Marvin A. BROWN d/b/a Brown Service
Company, Respondent.

No. B–1408.

Supreme Court of Texas.

June 11, 1969.

On the Merits Oct. 15, 1969.

Rehearing Denied Nov. 12, 1969.

Shannon, Gracey, Wright, Ratliff & Miller, Robert D. Wilkes, Pepper & Markward, R. C. Pepper, Fort Worth, for petitioners.

Stone, Tilley, Parker, Snakard, Law & Brown, James B. Barlow, Fort Worth, for respondent.

McGEE, Justice.

This is an action for damages from water flooding in plaintiff Joe B. Owen's building and premises of intervenor, Morris B. Parker, a tenant. This suit was filed against the defendant, Marvin A. Brown, d/b/a Brown Service Company, who had done maintenance work on the air conditioning equipment which caused the flooding. The trial court rendered judgment for the plaintiff and intervenor in the sum of $6,382.00. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 436 S.W.2d 373.

We do not reach the merits of the case in this opinion. We hold that the Court of Civil Appeals erred in overruling appellant's Alternate Motion to Substitute an Amended Bond.

The appeal bond was defective in at least two respects. The defendant was not named as principal in the bond, nor was the bond executed by him or anyone who had authority to act for him. The bond was executed by American Motorists Insurance Company, Marvin Brown's insurer, as principal and by Lumbermen's Mutual Casualty Company, as surety.

In the Court of Civil Appeals, pursuant to Rule 405 Texas Rules of Civil Procedure, plaintiff filed a motion to dismiss on the grounds that no proper bond had been filed. In reply to this motion to dismiss, defendant filed an Alternate Motion for Leave to Substitute Amended Bond. In support of this motion, the named and only defendant filed an affidavit to the effect that American Motorists Insurance Company carried his insurance; that the appeal was financially immaterial to him, since this company was obligated under his policy to pay any costs or judgments assessed against him; that he did desire to appeal from the judgment entered against him; and that the recitations in the appeal bond that he desired to appeal from the judgment were true and correct. This motion contained a prayer that leave be granted "to substitute a bond on such terms as the court may prescribe for the bond on file, * * *."

Despite the attack made by the motion to dismiss, the defendant has never tendered an amended bond.

Rule 354 T.R.C.P. regarding the cost bond provides: "The *appellant* shall execute a bond * * *."

Rule 364 regarding the supersedeas bond provides: (a) "An *appellant* desiring to suspend the execution of the judgment may do so by giving a good and sufficient bond * * *."

Rule 430 T.R.C.P. provides that: "When there is a defect of substance or form in any appeal * * * bond, then on motion to dismiss the same for such defect, the appellate court may allow the same to be amended by filing in such appellate court a new bond, on such terms as the court may prescribe."

Our courts have been lenient in permitting amendments of most any sort of instrument which can be said to be a bond. United Ass'n of Journeymen, Etc. v. Borden, 160 Tex. 203, 328 S.W.2d 739 (1959); Family Investment Co. of Houston v. Paley, 356 S.W.2d 353 (Tex.Civ.App.1962, writ dism'd); Grogan Mfg. Co. v. Lane, 140 Tex. 507, 169 S.W.2d 141; Speckels v. Kneip, 170 S.W.2d 255 (Tex.Civ.App.1942, writ ref'd).

██ We hold that the rules above cited require that the party appealing must be named as principal in the bond and that he must execute the bond as principal or have the bond executed by someone having legal authority to act for him.

Pursuant to Rules 430 and 491, Texas Rules of Civil Procedure, defendant Marvin A. Brown, d/b/a Brown Service Company, is granted leave to file an amended appeal bond in The Supreme Court of Texas on or before June 23, 1969. Upon such filing, this cause will be retained for decision on the merits; otherwise, the appeal from the judgment of the trial court will be dismissed.

## On the Merits

Plaintiff Joe B. Owen, the building owner, and Morris B. Parker, a tenant, as intervenor, brought this action for damages to the building and its contents caused by water flooding resulting from a disconnected hose on an air conditioning unit. The defendant service company had not installed the unit but had been called upon from time to time to make repairs. The trial court, based upon a jury verdict, rendered judgment for the plaintiff and intervenor in the sum of $6,382.00. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for a new trial. 436 S.W.2d 373. We reverse and render judgment that plaintiff take nothing.

In a prior decision we held Brown's bond to be defective and granted leave to amend the bond and to file it in this Court. 447 S.W.2d 883. This has been done.

Owen acquired an office building on August 5, 1965. At that time another company was servicing the units. On August 17, 1965 Owen became dissatisfied and arranged for Brown to service the units. No maintenance contract was executed; though arrangement was made for Brown's employee, Hughes, to perform service work when requested by Owen on a *per call* basis.

On July 30, 1966, a Saturday, Hughes, in response to a call from Owen, serviced the Carrier air conditioning unit. Hughes left the building before noon. Two of Owen's or Parker's employees worked that day. The last employee to leave locked the building about 4:30 p. m. On Sunday morning about 10:00 a. m. water was discovered rushing out of the front door of the building.

The 5-ton Carrier unit was located in a closet-like area, having a latticed door held in place with thumb twist locks. There was a water tank on the roof of the building from which water circulated down through pipes to the unit and then back to the tower. In order to minimize vibration and noise, gaps had been cut in the pipe into which rubber hoses had been inserted. The hose was fastened to the ends of the pipe by plumber's clamps. Neither Brown nor Hughes had installed the flexible hose connection that proved defective.

On Sunday morning it was discovered that one of these rubber hoses was securely fastened at one end of the pipe but it had separated from the other end, thus allowing water to escape. There was nothing wrong with the pipe or the hose. The screw by which the clamp could be adjusted was loose. This defective condition was remedied by placing the hose back on the end of the pipe and tightening the clamp with the screw driver.

On the liability issues the jury found: (1) Hughes failed to use ordinary care in servicing the air conditioning unit in question before leaving the building, and (2) that was a proximate cause of the water damage; (3) at the time Hughes left the premises the water hose fastener on the unit was not tightened securely; (4) that Hughes was not negligent in not tightening the clamps securely; (5) the proximate cause issue was unanswered; (6) that it

was not the result of an unavoidable accident.

■ Under the verdict, plaintiff failed to prove specific acts of negligence. To recover, plaintiff must rely on the general finding of negligence and proximate cause —Special Issues 1 and 2 under the theory of *res ipsa loquitur*. We agree with the holding of the Court of Civil Appeals—the doctrine of *res ipsa loquitur* is not applicable under the facts in this case.

As a matter of law, this is not a *res ipsa loquitur* case. The record shows conclusively that the instrumentality causing the harm was not under the exclusive control of Brown or his employee Hughes. Brown did not have a maintenance contract. Hughes only performed service work when requested by Owen on a *per call* basis.

■ In Texas *res ipsa loquitur* is a rule of evidence, whereby negligence of the defendant may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that in the absence of negligence, it would not have occurred; and (2) the thing which caused the injury is shown to have been under the management and control of the defendant. Bond v. Otis Elevator Co., 388 S.W.2d 681 (Tex. Sup.1965); Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935). This doctrine is based on the theory that the defendant, having control and management of the instrumentality causing the injury, was in a better position to foresee and avert the catastrophe, Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636 (1941), and that he has superior knowledge or means of information

to determine the cause of the defect. Welliver v. Lone Star Gas Co., 260 S.W.2d 70 (Tex.Civ.App.—Austin 1953, writ ref'd).

■ The Court of Civil Appeals remanded the case to the trial court for the reason that the case was tried on the wrong theory. We hold that the Court of Civil Appeals erred in remanding this case. In addition to the submission of the case on the inapplicable theory of *res ipsa loquitur*, petitioners alleged six specific acts of negligence and introduced the deposition of Dean Hughes, employee of respondent, as evidence under its pleadings. The charge submitted only one specific issue of negligence; and the jury in answer thereto found that Hughes was not negligent in not tightening the clamps securely. It does not appear from this record that petitioners requested issues inquiring about the other specific acts of negligence contained in their pleadings. The case was fully developed in the trial court. No mention is made in the briefs that the case has not been fully developed.

■ Justice does not require a remand when petitioners have obtained every special issue requested on the negligence theory and failed to obtain a favorable jury verdict based on the only correct theory submitted. A remand under these circumstances would merely afford an opportunity for another "bite at the apple." National Life & Accident Insurance Co. v. Blagg, 438 S.W.2d 905 (Tex.Sup.1969); Jackson v. Ewton, 411 S.W.2d 715 (Tex. Sup.1967); Rules 434, 505, Vernon's Annotated Texas Rules.

Judgments of the trial court and of the Court of Civil Appeals are reversed and judgment is here rendered that plaintiff take nothing.